GENERAL ELECTRIC CO. v. SUNDH ELECTRIC CO.

(District Court, S. D. New York. March 16, 1915.)

PATENTS ⟨⟩328—VALIDITY AND INFRINGEMENT—MOTOR-CONTROLLER.

The Linn patent, No. 794,991, for a motor-controller of the separately actuated contact type, with mechanical means for securing a certain time interval between the operation of the separate contacts, claims 1, 2, 3, and 4, were not anticipated and disclose patentable invention; also *held* infringed.

In Equity. Suit by the General Electric Company against the Sundh Electric Company for infringement of letters patent No. 794,991, for a motor-controller, granted to Linn July 18, 1905. On final hearing. Decree for complainant.

W. K. Richardson and Alex. D. Salinger, both of Boston, Mass., for plaintiff.

William B. Whitney, of New York City, for defendant.

MAYER, District Judge. Claims 27 and 28 have been withdrawn, and therefore the claims in issue are Nos. 1, 2, 3, and 4, and these are as follows:

"1. In combination, a plurality of separately actuated contacts operatively related to a circuit to be controlled, means for operating said contacts, and means for securing a certain time interval between the operation of the successive contacts without interfering with the free operation of the individual contacts.

"2. A motor-controller of the separately actuated contact type, comprising speed-controlling contacts, means for operating said contacts, and time-limiting devices constructed and arranged to control the successive operation of said contacts without interfering with the free operation of the individual contacts.

"3. A motor-controller of the separately actuated contact type, comprising speed-controlling contacts, means for closing said contacts in succession, and time-limiting devices constructed and arranged to regulate the successive closing of said contacts without interfering with the free operation of the individual contacts.

"4. A motor-controller, comprising a series of separately actuated contacts, an actuating system therefor, means whereby the operation of each of certain

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contacts is controlled by a preceding contact in the series, and means for securing definite time intervals between the operation of the contacts without interfering with the free operation of the individual contacts."

The invention of the patent in suit relates to "controllers" in the electrical art, which cut out artificial resistance external to the motor, so as to control the motor, particularly at starting. The earliest controllers were manually operated, but these were improved upon by what are known as the separately actuated contact type, to which the invention in suit is addressed. In this latter type there is a series of separate switches, each controlling one section of resistance and having its contacts operated by its own individual magnet. If the resistances are in series, each magnet cuts out a section of resistance, so as to diminish the total amount, or, if the resistances are in multiple, as in the Linn patent, then it connects its section of resistance in circuit, so as to increase the number of paths which the current may follow, thereby diminishing the resistance.

In order to provide for the consecutive action of these resistance switches, each magnet not only closes its own resistance switch, but also closes the actuating circuit of the next succeeding magnet, so that, after the operator has moved the master switch so as to close the circuit of the first magnet, the other magnets follow automatically. It was important, and indeed necessary, to determine in some manner or by some method the speed with which this series of magnets would be operated; for, if the resistances were thrown out too rapidly, too great a starting current would flow in the motor, with the possibility of grave damage. On the other hand, if the resistances were cut out too slowly, the motor would be accelerated too slowly, and such a result might be serious, especially in elevators and electric railways.

Various methods have been devised to control the rate of operation of the switches. A well-known and apparently much-used type is the so-called "throttle" magnet. There the throttle magnet was placed in the motor circuit, which responded to the amount of current in the circuit, and whenever that current exceeded a safe limit the throttle magnet suspended the progressive action of the successively acting resistance magnets. (See Fraser patent, No. 655,335.)

In another type of controller, illustrated by the Cutler patent, No. 653,470, the resistance magnets were so connected with the terminals of the motor armature as to be responsive to the increasing counter electromotive force of the motor, each magnet operating at a certain point in the building up of the counter electromotive force; hence the magnets would successively act to diminish resistance, as the counter electromotive force increased and the current consequently became less.

The rate of progress in both these types of controller varied with the electrical conditions. In many cases, however, it is possible to determine beforehand the rate of progress at which it is desired that the switches should act, since the motor conditions will not vary materially. In such a type of controller the resistances should be removed in succession, with a definite period of time between the operation of the succeeding resistance switches.

The advantage of this type of controller is that it makes a simple form, free from complications, and has the qualities, as stated by the expert Bentley, of "a clean, positive, and strong action of the resistance switch at a perfectly definite time, which can be readily and certainly set to suit the particular requirements of the individual installation." It is such a "time limit controller" which is the subject of the claims of the Linn patent in controversy, and which it is asserted has been made and sold by defendant in infringement of Linn's patent.

The issues in the case are clean-cut and are unusually free from side complications or questions. The important and fundamental point to be determined is whether the Linn patent has been anticipated, or is invalid for want of invention in view of the prior art.

While the electrical art has many difficulties for the layman, and has developed a language of its own, yet the controversy here does not suggest difficulty, once the question is grasped and the terms of art are understood. I shall not set forth definitions, nor the various accepted laws relating to the flow and action of the electrical current, for I am assuming that this opinion is for the information of litigants and counsel versed in the subject-matter.

What Linn accomplished was to obtain a desired result by mechanical means, and in this respect he originated an entirely new conception. The mechanism itself was not novel, but Linn's thought was that the time interval between the closing of the contacts of one magnet to govern its section of resistance and the closing of the similar speed-controlling contacts of the next magnet should be governed by freely and quickly operating each magnet to close its speed-controlling contacts as soon as its actuating circuit is' closed, and then providing by *mechanical means* a *definite time interval* between the closure of these contacts and the closure of the actuating circuit of the next magnet.

When the actuating circuit of a resistance magnet is closed, the magnet acts immediately to close its own main contacts, which cut out the resistance, but does not cause the closing of the actuating circuit of the next magnet until after a definite time limit; this delay being secured specifically by retarding through a dashpot arrangement of common type, the supplemental contacts which control the actuating circuit of the succeeding magnet. Linn's purpose, and the broad problem with which he was dealing, are aptly set forth by him as follows:

"The present invention relates to a system of control employing a controller of the separately actuated contact type in which the several controller contacts are operated by means of circuit connections so arranged that the system will be automatic, or at least partially automatic, in its operation. In such a system the circuit connections between the master-controller and the actuating-winding of the controller-contacts are so arranged that a circuit may be completed from a suitable source of supply through the actuating-winding of one or a number of the controller-contacts, and means are provided whereby the operation of the said contact or contacts connects the actuating-winding of a succeeding contact to the control system, the latter contact also operating to connect the actuating-winding of still another contact to the control system, and so on, so that after the actuating-circuit at the master-controller has been closed certain of the controller-contacts will operate automatically in succession to perform a desired function, such as the cutting out of the resistance in the motor-circuit. In such a system means

has also been provided for stopping the successive operation of the contacts whenever the current in the controlled circuit rises above a predetermined limit. In a system of the character above described, the several contacts that are successively actuated are liable to follow each other too rapidly, if some means is not provided for retarding their operation; and my present invention has for one of its objects to provide an improved retarding means, which will operate to retard the operation of each succeeding controller-contact without interfering with the free operation of each individual contact as soon as its actuating-circuit has been closed. The use of such retarding means will compel the operation of the several contacts at definite intervals, which may be adjusted once for all in any particular system."

The defendant introduced in evidence various patents of the prior art, some relating to controllers of the movable arm type, and others to controllers of the separately actuating contact type. It is unnecessary to refer to the first-mentioned class of controllers. In respect of the separately actuating type the references are the Ihlder patent, No. 612,629, of 1898, the Fraser patent, No. 655,335, of 1900, the Cutler patent, No. 653,470, of 1900, and the Shepard patent, No. 673,731 of 1901.

The Ihlder patent is probably the best reference, but it is unnecessary to discuss its characteristics in detail, for it lacks at least one of the vital and essential features of the Linn patent, to wit, means for securing a definite time interval without interfering with the free operation of the individual contacts. In the Fraser patent there is no time interval system, and in the Shepard patent there is no time interval theory or operation. In the so-called second Cutler patent, Cutler delays his magnet after its actuating-circuit has been closed, and thus proceeds upon a theory the reverse of that of Linn, who delays the closing of the actuating-circuit, but permits no delay in the magnet after such closing of the actuating-circuit.

I fully agree with the contention of plaintiff that the Ihlder and second Cutler patents, showing as they do a counter electromotive force system, and the Fraser patent, showing as it does a system of retardation by motor current, are the antitheses of a definite time-limit system, because they are designed to delay or expedite the cutting out of resistance sections, according to the hold on the motor and other varying electrical conditions. The expert Bentley briefly and clearly sums up the situation as follows:

"The chief advantage is that the time interval is thereby made definite and certain, being determined solely by a spring pulling against the dashpot, and not by a magnet pulling against a dashpot, or other retarding means. A magnet is an electrical device; its strength depends on the strength of the electric current in its coils, and the electric current in its coils is variable in practice, as I have heretofore fully pointed out. Accordingly, in any system in which the time interval is determined by a retardation applied to the magnet itself, one of the factors which determines the time interval is a variable, which fluctuates in value very materially, and consequently the time interval will vary, instead of being certain and definite. On the contrary, Linn's time interval is obtained without any balancing of retarding means against the operating current of the magnet, which current, as soon as it enters the magnet coil, produces a free operation of the resistance contact without any interference of any kind. The timing is all done before this by means solely of the spring acting against the dashpot. The spring and dashpot are mechanical devices, standing outside of the electrical arena, indifferent to all of the variations in speed, counter electromotive force, line voltage,

motor current, motor load, etc. They are of a certain and definite character, and are used by Linn in such a way as to give a definite and certain value to the time interval."

From the foregoing facts and observations it must be concluded that the defense of anticipation has failed.

It is not contended, nor is it a fact, that the Linn system has revolutionized the art, and has thereby supplanted other systems. It embodies however, a new thought capable of practical use in a difficult art, whose progress is developed often step by step by men usually of more than average scientific equipment; and a new conception of that character is well entitled to be considered as invention, and not merely the slight forward step which falls this side of that coveted field.

Upon the question of infringement it is contended by defendant that the claim should be closely and narrowly construed, and nonutility is strongly urged. There is really no question of utility in the case, because I have no doubt upon the proposition of invention which would call utility to the rescue to resolve a doubt in favor of the patent. We are not dealing here with the fair limits of the scope of the claims, for it is quite enough that the defendant, in its device, has adopted everything essential in the Linn claims.

Each system belongs to the separately actuating controller type, each magnet governs the actuating circuit of the following magnet by means of supplementary contacts which close after a definite time interval governed by a spring and dashpot, and each magnet closes its own controller contacts without any delay or interference. The similarity of the systems is well illustrated and discussed in the evidence, and is visually apparent on examination of defendant's structure.

Finally, I am unable to see how the question of infringement is affected by the fact that defendant employs an alternating instead of a direct current system. I am of opinion, therefore, that claims 1, 2, 3, and 4 are infringed, as well as valid.

In view of the fact that defendant was called upon to resist claims 27 and 28, and that these were withdrawn, I will award only half costs to plaintiff. In other respects, plaintiff will have the usual decree.

In conclusion, I take pleasure in stating that the case, as developed and presented, is a model of what can be done on a printed record, where no question of prior use is involved, and where, owing to the nature of the art, satisfactory statements of the points in controversy can be worked out in depositions. Each side called but one expert, who testified clearly and fairly from his point of view, and counsel confined themselves strictly to the issues, with the result that the subject-matter was condensed into a comparatively short record. The arguments and presentations of counsel enabled the court quickly to understand, at least, what was involved in the controversy, and made what seemed a difficult task agreeable, interesting, and instructive.